IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DERRICK FOSTER, | : | |
| | : | Civil No. 3:14-CV-1368 |
| Plaintiff | : | |
| | : | (Judge Caputo) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| CHARLES MAIORANA, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case

When we last encountered the plaintiff, Derrick Foster, we were recommending dismissal of a complaint filed by Foster, a complaint we found to be "a largely incomprehensible document," a recommendation which was subsequently adopted by the district court and affirmed by the court of appeals.  Foster v. Raleigh, 3:10-CV-1804, 2010 WL 5391317 (M.D. Pa. Oct. 20, 2010) report and recommendation adopted, 3:10-CV-1804, 2010 WL 5391316 (M.D. Pa. Dec. 22, 2010) aff'd, 445 F. App'x 458 (3d Cir. 2011).

Now, some four years later, we have occasion to conduct a screening review of the latest a *pro se, in forma pauperis* action brought by Foster, who has been housed in various federal prisons outside the district for many years.  In this latest *pro se* complaint Foster names twelve defendants, including the Director of the Bureau of

Prisons, along with wardens and staff at various prisons located in this district and elsewhere.  (Doc. 1.)

As to those defendants who are located within this district, Foster's complaint consists almost entirely of time-barred claims regarding events which are alleged to have occurred between 2008 and 2010, some four to six years ago.  (Id., ¶¶17-19.) Indeed, the sole allegation in the complaint relating to any defendant within the jurisdiction of this Court which falls within the two year statute of limitations can be found in paragraph 20 of Foster's complaint.  This paragraph alleges that on or about July 10-11, 2012, a single correctional official, William Fink, attempted to deny Foster a prison transfer in a retaliatory fashion, and improperly discarded legal papers found in Foster's personal property.  (Id., ¶20.)  This averment is then curiously juxtaposed with an assertion that the undersigned should have recused himself from consideration of Foster's prior lawsuit because "his spouse once was employed at the FCI Allenwood complex as a Warden."  (Id.)[1]

The balance of Foster's complaint seems to consist of unrelated allegations leveled at prison officials located in the Western District of Pennsylvania, where Foster is now housed.  (Id., ¶¶21-30.)  On the basis of this odd array of claims, Foster

---

[1]Pursuant to Rule 201 of the Federal Rules of Evidence, the Court takes judicial notice of the fact that I am not, and never have been, married to any prison wardens.

now seeks damages, as well as a preliminary and permanent injunction directing that all of his jailers "cease and desist unjust acts."  (Doc. 2.)

Along with his complaint, Foster has filed a motion for leave to proceed *in forma pauperis*.  (Doc. 3.)  For the reasons set forth below, we will GRANT the motion for leave to proceed *in forma pauperis*, but recommend that this complaint be dismissed with respect to the defendants located within the Middle District of Pennsylvania, and that the allegations relating to defendants located in the Western District of Pennsylvania either be dismissed or transferred to that court for its consideration.   It is further recommended that Foster's motion for preliminary injunction be denied.

## II.   Discussion

### A.   Screening of *Pro Se In Forma Pauperis* Complaints–Standard of Review

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which seek redress against government officials.  See 28 U.S.C. § 1915(e)(2)(B)(ii).  Specifically, the Court must assess whether a *pro se* complaint fails to state a claim upon which relief may be granted, since Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In addition, when

reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted.  This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years.  Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) continuing with our opinion in <u>Phillips</u> [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a p[arty] to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).  However, a court "need not credit a

complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... p[arty] can prove facts that the ... p[arty] has not alleged."  Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a party must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do."  Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 679.  According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than
> conclusions are not entitled to the assumption of truth.  While legal
> conclusions can provide the framework of a complaint, they must be
> supported by factual allegations.  When there are well-pleaded factual
> allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a complaint must recite factual allegations sufficient to raise the party's claimed right to relief beyond the level of mere speculation.  As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state
> a claim, district courts should conduct a two-part analysis.  First, the
> factual and legal elements of a claim should be separated.  The District
> Court must accept all of the . . .  well-pleaded facts as true, but may
> disregard any legal  conclusions.  Second, a District Court must then
> determine whether the facts alleged . . .  are sufficient to  show that the
> plaintiff has a "plausible claim for relief."  In other words, a complaint
> must do more than allege the p[arty's] entitlement to relief.  A complaint
> has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed:  "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal.  The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.'  Twombly, 550 U.S. at 570,

127 S.Ct. 1955.  A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955).  This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id.  A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' ' " Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In practice, then, consideration of the legal sufficiency of a complaint entails a three-step analysis:  "First, the court must 'tak[e] note of the elements a p[arty] must plead to state a claim.' Iqbal, 129 S.Ct. at 1947.  Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950.  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

(a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

Judged against these legal benchmarks, for the reasons set forth below, Foster's complaint is fatally flawed in the following respects and should be dismissed.

### B.     Foster Has Failed to Properly State a Claim of Supervisory Liability

At the outset, with respect to the Director of the Bureau of Prisons and other supervisory defendants named in this complaint, the complaint fails to state a claim upon which relief may be granted. It is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendants were prison supervisors when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v. Thiboutot,

448 U.S. 1 (1980).  Constitutional tort liability is personal in nature and can only

follow personal involvement in the alleged wrongful conduct shown through specific

allegations of personal direction or of actual knowledge and acquiescence in the

challenged practice.  Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have
> personal involvement in the alleged wrongdoing; liability cannot be
> predicated solely on the operation of *respondeat superior*.  Personal
> involvement can be shown through allegations of personal direction or
> of actual knowledge and acquiescence."  Rode v. Dellarciprete, 845 F.2d
> 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional
> conduct of their subordinates under a theory of *respondeat superior*. . .
> .  See Monell v. New York City Dept. of Social Servs., 436 U.S. 658,
> 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability
> for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v.
> Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's
> liability "will only result from his own neglect in not properly
> superintending the discharge" of his subordinates' duties); Robertson v.
> Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A
> public officer or agent is not responsible for the misfeasances or position
> wrongs, or for the nonfeasances, or negligences, or omissions of duty, of
> the subagents or servants or other persons properly employed by or under
> him, in the discharge of his official duties").  Because vicarious liability
> is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that
> each  Government-official  defendant,  through  the  official's  own
> individual actions, has violated the Constitution.

Ashcroft v. Iqbal,  556 U.S. 662, 676 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them*. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir. 2006)(emphasis added).

Here, in many instances Foster does little more than name a supervisory official in the caption of the case, and then seek to hold that official personally liable based upon the official's supervisory status without making any specific factual allegations about these defendants in the body of this pleading.  To the extent that Foster simply premises the liability of these defendants upon their supervisory status without setting forth any further factual basis for a claim in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of these defendants. Hudson v. City of McKeesport, 244 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case.)

**C.   Foster's Claims Against Defendants in this District Are for the Most Part Time-Barred**

Furthermore, for the most part Foster's claims against defendants in this district relate to events occurring between 2008 and 2010, four to six years ago, and are time-barred. When conducting a screening review of a *pro se* complaint under 28 U.S.C. § 1915, a court may consider whether the complaint is barred under the applicable statute of limitations. As the United States Court of Appeals for the Third Circuit recently explained when it affirmed the screening dismissal of a *pro se* complaint on statute of limitations grounds:

> Civil rights claims are subject to the statute of limitations for personal injury actions of the pertinent state. Thus, Pennsylvania's two year statutory period applies to [these] claims. See Lake v. Arnold, 232 F.3d 360, 368 (3d Cir.2000). The limitations period begins when the plaintiff knows or had reason to know of the injury forming the basis for the federal civil rights action. Gera v. Commonwealth of Pennsylvania, 256 Fed.Appx. 563, 564-65 (3d Cir.2007). Although we have not addressed the issue in a precedential decision, other courts have held that although the statute of limitations is an affirmative defense, district court may *sua sponte* dismiss a complaint under § 1915(e) where the defense is obvious from the complaint and no development of the factual record is required. See Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir.2006); see also Eriline Co. S.A. v. Johnson, 440 F.3d 648, 656-57 (4th Cir.2006) (citation omitted)(finding that a district court's screening authority under § 1915(e) "differentiates in forma pauperis suits from ordinary civil suits and justifies an exception to the general rule that a statute of limitations defense should not be raised and considered sua sponte.")

Smith v. Delaware County Court 260 F. App'x. 454, 455 (3d Cir. 2008); see also Jackson v. Fernandez, No. 08-5694, 2009 WL 233559 (D.N.J. Jan. 26, 2009); Hurst v. City of Dover, No. 04-83, 2008 WL 2421468 (D. Del. June 16, 2008).

It is well-settled that Bivens constitutional tort claims are subject to the state statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 266-67 (1985).  In Pennsylvania, the statute of limitations for a personal injury action is two years. 42 Pa.C.S.A. § 5524.  A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action.  Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998); see also, Nelson v. County of Allegheny, 60 F.3d 1010 (3d Cir. 1995).

While this two-year limitations period may be extended based upon a continuing wrong theory, a plaintiff must make an exacting showing to avail himself of this grounds for tolling the statute of limitations.  For example, it is well settled that the "continuing conduct of [a] defendant will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action].  On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." Barnes v. American Tobacco Co., 161 F.3d 127, 154 (3d Cir. 1998) (quoting Kichline v. Consolidated Rail Corp., 800 F. 2d 356, 360 (3d Cir. 1986)).  See also Lake v. Arnold,  232 F.3d 360, 266-68 (3d Cir. 2000).  Instead:

The continuing violations doctrine is an "equitable exception to the timely filing requirement." West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir.1995). Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.1991). In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." West, 45 F.3d at 755 (quotation omitted). Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. See id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983)). The consideration of "degree of permanence" is the most important of the factors. See Berry, 715 F.2d at 981.

Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001)

Here, with respect to all of Foster's allegations of misconduct by prison officials in 2008 and 2010, the matters about which Foster complains plainly had the degree of permanence which should have alerted Foster to the need to promptly pursue these claims. Yet, it is apparent from the face of Foster's complaint that he delayed many years beyond the two year statute of limitations before lodging these claims with this court. Therefore, it is evident that these claims are now time-barred by the two-year statute of limitations that applies to civil rights claims and should be dismissed.

**D.** **Foster's Claims Against Defendant Fink Fail, as Pleaded By The Plaintiff**

The sole claim made against a defendant within the jurisdiction of this Court which does not appear to be plainly time barred is Foster' allegation that on or about July 10-11, 2012, a single correctional official, William Fink, attempted to deny Foster a prison transfer in a retaliatory fashion, and improperly discarded legal papers found in Foster's personal property.  (Id., ¶20.)

This claim, which is advanced in a cursory fashion by Foster fails to meet federal pleading standards for several reasons.  First, to the extent that Foster is asserting a due process claim, inmate due process complaints arising out of property loss claims are judged settled legal standards which have often recognized that:

> Like other constitutional rights, the Due Process rights of prisoners may be accommodated to a prison's legitimate security needs.  See Bell v. Wolfish, 441 U.S. 520, 558-60, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). [Therefore] "[A]n unauthorized intentional deprivation of property" by prison officials does not violate the Due Process Clause "if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)(citing Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Pre-deprivation notice is not constitutionally required. See id.

Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008).

Thus, there are typically two crucial component to any inmate due process claim in this setting:  (1) the confiscation of property; *and* (2) an allegation that property was taken and the prisoner was afforded no post-deprivation administrative remedy.  It

follows, then, that where a prison "provides an adequate post-deprivation remedy, see e.g. Tillman v. Lebanon County Corr. Fac., 121 F.3d 410, 422 (3d Cir.2000), . . . the existence of this post-deprivation remedy forecloses any due process claim, Austin v. Lehman, 893 F.Supp. 448, 454 (E.D.Pa.1995), even if an inmate is dissatisfied with the result of the process. Iseley v. Horn, 1996 WL 510090, at * 6 (E.D.Pa.1996)." Rambert v. Beard, 4:CV-09-0634, 2012 WL 760619 (M.D. Pa. Mar. 7, 2012). Given the fact that Foster's complaint asserts that he fully exhausted administrative grievances relating to all of the matters set forth in his complaint, (Doc. 1, ¶31.), it is undisputed that the defendants "provide[d] an adequate post-deprivation remedy, see e.g. Tillman v. Lebanon County Corr. Fac., 121 F.3d 410, 422 (3d Cir.2000)[and that] the existence of this post-deprivation remedy [would typically] foreclose[] any due process claim, Austin v. Lehman, 893 F.Supp. 448, 454 (E.D.Pa.1995), even if an inmate is dissatisfied with the result of the process. Iseley v. Horn, 1996 WL 510090, at * 6 (E.D.Pa.1996)." Rambert v. Beard, 4:CV-09-0634, 2012 WL 760619 (M.D. Pa. Mar. 7, 2012).

Even if we liberally construed Foster's complaint as alleging an interference with the plaintiff's right of access to the courts, this claim would still fail. Since 1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817 (1977). As the Supreme Court initially observed, this right of access to the courts is satisfied when corrections

officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law. Id. at 827 ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.")

Two decades later, in 1996, the Supreme Court provided further definition and guidance regarding the scope and nature of this right of access to the courts in Lewis v. Carey, 518 U.S. 343 (1996). In Lewis, the court eschewed efforts to define this right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete outcomes when assessing such claims. As the court observed:

> Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's . . .  legal assistance program is subpar in some theoretical sense. . . .  Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," id., at 823, 97 S.Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the  . . . legal assistance program hindered his efforts to pursue a legal claim. . . . . Although Bounds itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which Bounds relied, see id., at 821-825, 97 S.Ct., at 1494-1497. Moreover, the assumption of an actual-injury requirement seems to us implicit in the opinion's statement that "we encourage local experimentation" in various methods of assuring access to the courts. Id., at 832, 97 S.Ct., at 1500.

Lewis v. Casey, 518 U.S. 343, 351-52 (1996).

Thus, following <u>Lewis</u> courts have consistently recognized two guiding principles which animate access-to-court claims by prisoners. First, such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. <u>See, e.g.</u>, <u>Oliver v. Fauver</u>, 118 F.3d 175 (3d Cir. 1997); <u>Demeter v. Buskirk</u>, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); <u>Castro v. Chesney</u>, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31, 1998). Furthermore, in order to bring a claim based upon the right of access to the courts, inmates must claim "(1) that they suffered an actual injury—that they lost a chance to pursue a non-frivolous or arguable underlying claim; and (2) that they have no other remedy that may be awarded as recompense for the lost claim other than in the present denial of access suit." <u>Monroe v. Beard</u>, 536 F.3d 198, 205 (3d Cir.2008) (quoting <u>Christopher v. Harbury</u>, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002)) (internal quotations omitted). Thus, in order to state a claim upon which relief may be granted an inmate-plaintiff's complaint must "describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.' " <u>Monroe</u>, 536 F.3d at 205–06 (quoting <u>Christopher</u>, 536 U.S. at 416–17). In this case, Foster does not identify the legal claims which have allegedly been hampered in any fashion, since the one civil action which he had pending was dismissed for failure to state a claim upon which relief may be granted. <u>Foster v. Raleigh</u>, 3:10-CV-1804, 2010 WL 5391317 (M.D. Pa. Oct. 20, 2010) <u>report and</u>

recommendation adopted, 3:10-CV-1804, 2010 WL 5391316 (M.D. Pa. Dec. 22, 2010) aff'd, 445 F. App'x 458 (3d Cir. 2011).  Therefore, we are unable to make any determination regarding whether any of Foster's underlying claim were anything "more than a mere hope."  Nor can we ascertain whether Foster has, in fact, lost a legal remedy.  This level of generality will not support an access-to-courts claim. Therefore, this claim fails on its merits.

Finally, Foster's talismanic assertion that this defendant attempted to retaliate against him by allegedly unsuccessfully attempting to deny Foster a transfer fails to state a claim upon which relief may be granted.  With respect to this claim, a prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights must first prove the following three elements:  (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct.  Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002).  With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights."  Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000).

At the outset, it is not clear exactly what constitutionally protected conduct Foster claims to have engaged in that precipitated the allegedly retaliatory conduct.

In addition, it is unclear how an alleged, unsuccessful attempt to delay Foster's transfer to another prison would rise to the level of a legally cognizable adverse action. Moreover, the third essential element to a retaliation claim is that there be a causal link between the exercise of a constitutional right and the adverse action taken against the prisoner. Rauser, 241 F.3d at 333-34. To establish this third, and crucial, component to a constitutional retaliation claim, causation, an inmate must make an exacting showing. In this setting:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.1997); Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir.1997). In the absence of that proof the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of the fact should infer causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir.2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Moreover, when examining these causation issues, we are specifically admonished that:

> A court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate. Consequently, a putative plaintiff by engaging in protected activity might be able to insulate himself from actions adverse to him that a public actor should take. The point we

make is not theoretical as we do not doubt that public actors are well aware that persons disappointed with official decisions and actions frequently bring litigation against the actors responsible for the decisions or actions in their individual capacities, and the actors surely would want to avoid such unpleasant events. Thus, it would be natural for a public actor to attempt to head off a putative plaintiff with the unwarranted expenditure of public funds. Courts by their decisions should not encourage such activity and, by enforcing the requirement that a plaintiff show causation in a retaliation case, can avoid doing so as they will protect the public actor from unjustified litigation for his appropriate conduct. In this regard we recognize that often public actors such as those in this case must make a large number of decisions in charged atmospheres thereby inviting litigation against themselves in which plaintiffs ask the courts to second guess the actors' decisions.

Id. at 267-68.

Mindful of these concerns, courts have in the past carefully scrutinized claims of retaliation premised solely on circumstantial proof of a temporal proximity between the plaintiff's conduct and allegedly retaliatory acts. Indeed, this Court has spoken directly to the issue of what must be shown to state a valid complaint in this factual context, noting that:

To establish the causation element of a retaliation claim, a plaintiff must prove that his or her participation in a protected activity motivated the defendant to perform the retaliatory act. Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir.2002); Meenan v. Harrison, Civ. A. No. 3:03-CV-1300, 2006 WL 1000032, at *4 (M.D.Pa. Apr.13, 2006) (observing that a plaintiff must demonstrate that the exercise of First Amendment rights "played some substantial role" in the defendant's action). The temporal proximity of a retaliatory act to a plaintiff's exercise of his or her First Amendment rights is probative, but not dispositive, of the causation element. Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir.2003); see also Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir.1997) (stating that "temporal proximity merely provides an

evidentiary basis from which an inference can be drawn"). For temporal proximity alone to establish causation, the "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." Marasco, 318 F.3d at 512 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir.1997)) . . . [T]he Third Circuit Court of Appeals has suggested that a temporal proximity of two days is sufficient to establish causation, see Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 & n. 5 (3d Cir.2000), whereas a temporal proximity of ten days is sufficient to establish causation only when accompanied by other evidence of . . . wrongdoing, Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir.2003). This suggests that the temporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence.

Conklin v. Warrington Tp., No. 06-2245,  2009 WL 1227950, *3 (M.D.Pa. April 30,2009).

Here, Foster's current complaint contains few well-pleaded facts describing this alleged retaliation, and even fewer facts linking this action in a retaliatory fashion to some predicate constitutionally-protected activity.  Given the paucity of well-pleaded facts in this case, we are unable to draw any retaliatory inference from Foster's claims, claims that are unmoored to any factual averments, and this claim should also be dismissed.

## E.    Foster's Remaining Claims Relate to Persons and Events Outside the Jurisdiction of the Court

As we have previously noted, the balance of Foster's complaint seems to consist of unrelated allegations leveled at prison officials located in the Western District of Pennsylvania, where Foster is now housed.  (Id., ¶¶21-30.)  As to these defendants and claim, this complaint is flawed in yet another way–venue is lacking over these parties

and claims in this district.  The proper venue for a claim in federal court is defined by statute, 28 U.S.C. §1391, in the following terms:  "(b) Venue in general.--A civil action may be brought in--(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b).

Here, with respect to Foster's remaining claims it is apparent that the defendants named in these claims reside in the Western District of Pennsylvania.  It is also evident that a substantial part of the events which are the subject of this complaint against these defendants occurred in the Western District of Pennsylvania.  Therefore, venue over these defendants, events and claims exists in the Western District of Pennsylvania.

When it appears that a case has been brought in the wrong venue, there are two potential remedies available to the court.  The court may either dismiss the action for lack of venue pursuant to 28 U.S.C. §1406, and  Rule 12(b)(3) of the Federal Rules of Civil Procedure, or "if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought."  28 U.S.C. § 1406(a).  In this case, it is submitted that dismissal, rather than transfer, is the proper course to follow given the apparent lack of venue over these claims and parties.  Indeed, when one considers

the animating factor governing transfer decisions–the interest of justice– it is evident that the interest of justice would not be served by transferring the incomprehensible claims of an eccentric litigant to a new court for its consideration.  Rather, those claims should be dismissed, and Foster may then seek to bring whatever claims he believes he may have in the proper venue at some future date.

### F.    Foster's Request for Injunctive Relief is Both Improper and Moot as to This Court Since Foster is No Longer Housed in this District

Finally, Foster invites us to use this lawsuit as a platform to enjoin prison officials who are not parties to the lawsuit, and regulate matters relating to his current custody, issues which are entirely unrelated to the questions that remain in this case and arise entirely within the venue of another federal court, the United States District Court for the Western District of Pennsylvania, a district where Foster is now housed.

We will decline this invitation for four reasons:  First, this motion is inappropriate since the injunction seeks:

> [R]elief that is not requested or at all related to the remaining claims [in this case].  This is not permissible.  See, e.g., Devised v. Herrington, 42 F.3d 470, 471 (8th Cir.1994) ("Devose's motion is based on new assertions of mistreatment that are entirely different from the claim raised and the relief requested in his inadequate medical treatment lawsuit. Although these new assertions might support additional claims against the same prison officials, they cannot provide the basis for a preliminary injunction in this lawsuit."); Spencer v. Stapler, Civ. No. 04–1532, 2006 WL 2052704, *9 (D.Ariz. July 21, 2006) ("Plaintiff's motion [for injunctive relief] concerns events that are unrelated to the subject of his complaint and that concerns conduct of persons other than the Defendants.  Plaintiff's request will therefore be denied."); Westbank

Yellow Pages v. BRI, Inc., Civ. No. 96–1128, 1996 WL 255912, * 1, (E.D.La. May 13, 1996) ("A preliminary injunction is not an appropriate vehicle for trying to obtain relief that is not even sought in the underlying action."); Williams v. Platt, 2006 WL 149024, *2 (W.D.Okla. Jan.18, 2006) ("The complaint addresses two matters at the Logan County Jail: (1) the denial of medical treatment between March and June 2001; and (2) the promotion of an inmate assault on November 8, 2001.  In his requests for injunctive relief, the Plaintiff addresses matters at a separate facility, involving harassment, conspiracy, denial of a bottom bunk, and confiscation of legal materials.  A preliminary injunction would be inappropriate to address wrongs wholly unrelated to the complaint.") (footnotes omitted)."

Banks v. Good, CA 06-253, 2011 WL 2437061 (W.D. Pa. Apr. 20, 2011) report and recommendation adopted, CA 06-253, 2011 WL 2418699 (W.D. Pa. June 14, 2011).

Second, in this motion for preliminary injunction Foster seeks to enjoin numerous individuals who are not parties to the instant lawsuit.  This effort, in turn, runs afoul of the:

"[G]eneral rule that a court may not enter an injunction against a person who has not been made a party to the case before it." Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc., 96 F.3d 1390, 1394 (Fed.Cir.1996) (citing Scott v. Donald, 165 U.S. 107, 117, 17 S.Ct. 262, 41 L.Ed. 648 (1897) ("The decree is also objectionable because it enjoins persons not parties to the suit.")).  Indeed, courts have refused to issue injunctions against non-parties.  See U.S. Commodity Futures Trading Comm'n v. Amaranth Advisors, LLC, 523 F.Supp.2d 328, 334–35 (S.D.N.Y.2007) (the court denied the defendant's motion for a preliminary injunction against the Federal Energy Regulatory Commission because it was not a party to the suit and it was not an "officer, agent, servant, employee, or attorney" of any party); Williams v. Platt, Civ. No. 03–281–C, 2006 WL 149024 at *2 (W.D.Okla. Jan.18, 2006) (unpublished) (the court denied the plaintiff's motion for an injunction noting that he had "not established a relationship between the preliminary injunction and the underlying civil rights claim, and he seeks to bind non-parties without any suggestion of active concert or

participation by the named defendants").  Moreover, once a court has issued an injunction against a party, that injunction may only be enforced against non-parties that are officers, agents, servants, employees, or attorneys of a party, or ones that are in active concert or participation with such non-parties or the party itself.  Fed.R.Civ.P. 65(d)(2).  To be bound by an injunction, a "non-party must have constructively had his day in court." Harris County, Tex. v. CarMax Auto Superstores Inc., 177 F.3d 306, 314 (5th Cir.1999) ("the relevant inquiry is ... whether [the non-party] had such a key role in the corporation's participation in the injunction proceedings that it can be fairly said that he has had his day in court in relation to the validity of the injunction.") (citation omitted) (emphasis in original).

Banks v. Good, CA 06-253, 2011 WL 2437061 (W.D. Pa. Apr. 20, 2011) report and recommendation adopted, CA 06-253, 2011 WL 2418699 (W.D. Pa. June 14, 2011).

Third, Foster's motion for preliminary injunction ignores basic venue principles, which strongly suggest that Foster's disputes with prison officials in the Western District of Pennsylvania should be heard in that district where Foster is now housed, and not randomly appended to a lawsuit involving completely different parties, and unrelated events at other prisons which allegedly occurred many years prior to the events set forth in this motion.

Finally, Foster's requests for injunctive relief from this Court are now moot since Foster is not housed in this district.  The mootness doctrine recognizes a fundamental truth in litigation:  "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot."  Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d

Cir. 1996).   In this case, Foster seeks to enjoin prison officials, including prison officials in this district, yet it is entirely undisputed that Foster is no longer in the custody of any defendants within the jurisdiction of this Court.

This simple fact raises a threshold, and insurmountable, obstacle to this motion for injunctive relief relating to conditions at a prison where he is no longer incarcerated.   Upon consideration, we conclude that the plaintiff's transfer to a prison outside the jurisdiction of this Court, some two years prior to the filing of this lawsuit renders his motion for injunctive relief from this Court moot, and that motion should be denied.   In this setting,  the United States Court of Appeals for the Third Circuit has observed that, when addressing inmate requests for injunctive relief:

> As a preliminary matter, we must determine whether the inmates' claims are moot because "a federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." Preiser v. Newkirk, 422 U.S. 395, 401 (1975) (quotations omitted); see also Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir.1993).   An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims. Abdul-Akbar, 4 F.3d at 197 (former inmate's claim that the prison library's legal resources were constitutionally inadequate was moot because plaintiff was released five months before trial).

Sutton v. Rasheed,  323 F.3d 236, 248 (3d Cir. 2003). See  Griffin v. Beard, No. 09-4404, 2010 WL 4642961 (3d Cir. Nov. 17, 2010)(transfer from SCI Huntingdon renders inmate injunctive relief claim moot).   Indeed, as this Court has previously

observed, in a case such as this, where an inmate seeks injunctive relief against his

jailers but is no longer housed at the prison where these injunctive claims arose:

> [H]is request[] to enjoin the defendants from interfering with his [rights]
> is academic.   See Muslim v. Frame, 854 F.Supp. 1215, 1222
> (E.D.Pa.1994).   In other words, [the prisoner-plaintiff's] transfer to
> another institution moots any claims for injunctive or declaratory relief.
> See Abdul-Akbar v. Watson, 4 F.3d 195, 206-07 (3rd Cir.1993); Weaver
> v. Wilcox, 650 F.2d 22, 27 (3rd Cir.1981).

Fortes v. Harding, 19 F.Supp.2d 323, 326 (M.D.Pa.1998).

These principles control here, and compel denial of this motion for injunctive

relief as moot since the prisoner-plaintiff is no longer housed at any prison within the

jurisdiction of this Court, and has not been located within the jurisdiction of this Court

for at least two years.

## III.   **Recommendation**

Accordingly, for the foregoing reasons, the plaintiff's motion for leave to

proceed *in forma pauperis* (Doc. 3.) is GRANTED , but IT IS RECOMMENDED that

the plaintiff's complaint be dismissed for the failure to state a claim upon which relief

can be granted.   In the alternative, IT IS RECOMMENDED that the allegations

relating to defendants located in the Western District of Pennsylvania be transferred

to that court for its consideration, and it is further RECOMMENDED that the

plaintiff's motion for preliminary injunction (Doc. 2.), be DENIED.

The plaintiff is further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 21st day of July, 2014.

_**S/Martin C. Carlson**_
Martin C. Carlson
United States Magistrate Judge